The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. So we're happy to hear argument in our first case, Lawlor v. Zook. Mr. Cain. Zook, I guess it is. Good morning. May it please the Court. Good morning. Twelve citizens decided Mark Lawlor's fate based on their appraisal of his future dangerousness. Mr. Lawlor's best argument on that question was that he would be a nonviolent and manageable prisoner. And he sought to present the testimony of an expert psychologist who personally examined him, interviewed his former parole officer and prison guards, reviewed his record, and determined that Mr. Lawlor did not pose a serious risk of committing future violence in prison. The trial court repeatedly forbade the expert from testifying to his conclusions, however, on the ground that Mr. Lawlor's future conduct in prison was supposedly not relevant to the question of his future dangerousness. I thought the trial court's concern was that evidence with respect to just prison as opposed to society as a whole wasn't appropriate. Well, Dr. Cunningham sought to testify as to how Mr. Lawlor would behave, what his character and behavior would be like in prison. It is true the trial court excluded that, all of that, which was Dr. Cunningham's expertise and it was the focus of his testimony. That ruling undermined the crux of the defendant's mitigation case, and it is plainly- I'm sorry. I don't think you quite understood my colleague's question. And I read the district court opinion this way, too, although the instruction was not quite the same. But I thought that the district court's problem with your argument was that the court read the prior decisions, the precedent to require that you show future, that you only be allowed to put in evidence of future lack of dangerousness in general. And you kept insisting, and therefore he resisted, evidence just about prison. That was my question. Okay. So that is correct, that that is how the trial court ruled and how the district court reasoned. However, that has never been Virginia law in any case but Mr. Lawlor's. Because Virginia law is- Virginia law says that to prove the future dangerousness aggravator, evidence of both in prison and out of prison behavior is relevant. And that's exactly, that sort of encapsulates what I was getting at. And what I find difficult, and that is you framed it as just prison environment. Yes. The judge said, no, we can't do just prison environment. Right. And, indeed, it appears that Virginia law says you do the totality. So it really, it seemed as though you were just butting heads but talking past each other. Well, I would point out that in case after case, including in Morva, which we may get to discussing, including in a number of cases that the Commonwealth cites in its brief, the Virginia law has always been that the ultimate question is society as a whole. Now, evidence that is relevant to that ultimate question includes evidence both in prison and out of prison. Right. But aside from the fact of how the Virginia courts define it, the United States Supreme Court in Skipper v. South Carolina said a defendant has a constitutionally protected right to present a defense in mitigation that he will be a good prisoner in the future. He has a protected right to present evidence from his past prison conduct to prove that, but he also has a right to prove that in other ways as well. Did you ever see what I found was missing, and maybe it's not a necessary element of your argument, that you would say to the district court, look, you're right, the universe is larger than what my witness can testify to, but my witness is testifying to evidence that is relevant within this larger. I didn't hear quite that. Absolutely. We attempted to make that argument. And I believe that the United States Supreme Court has repeatedly held, in the context of future dangerousness, evidence that relevancy is not, for example, in McCoy v. North Carolina. To prove the ultimate point, you don't have to prove it all at once. I'm sorry, but you keep morphing out of the question. Okay. Which is whether it was clear, because it wasn't clear, and I'm sorry to take up your time, but it really wasn't entirely clear to me that it was clear to the trial court that it was a subset of a larger picture, because all you talked about was that narrow prison focus. That was Mr. Lawler conceded that he would be a danger outside of prison. Okay. His only good argument was that he would be a safe, manageable prisoner. Because of the alcohol, as soon as he got out of prison, he started drinking again, and he was a wild man. Yes, absolutely. That kind of defense is constitutionally protected. In Justice O'Connor's controlling concurrence in Simmons, she explained that the defendant there had his pathology was he assaulted elderly women, and he attempted to put on a defense that I'll be in prison forever, I won't be able to act out in the violent way in which I am prone to. That was a constitutionally protected mitigation theory. It was very similar and corollary to what Mr. Lawler was attempting to present. Thank you. I find that very helpful, and I didn't want to belabor it, but I do have one slightly related question. Please. I'm going to tell you what my understanding is, and I want you to tell me if I'm wrong. My understanding is that the witness was allowed to testify to the history, the historical facts of Lawler's behavior as, if you will, a model prisoner. Your objection is that he was not allowed to give predictive testimony. That's correct. That's correct? That's correct. Okay, and that what the trial court said to that was that was the ultimate question for the jury. Am I connecting that correctly? I don't think that that's what the trial court said. That's not Virginia law. Virginia law routinely permits expert testimony by the Commonwealth. You've answered my question. Thank you. But I do want to address your point, which is that there was prior prison conduct evidence put on, and there were a number of different categories of evidence that the defense painstakingly put on to lay the groundwork for Dr. Cunningham's predictive testimony. But the trial court's rulings, which were made to the jury, openly to the jury, saying in-prison conduct in the future of Mr. Lawler is not relevant to this sentencing determination. By repeatedly telling the jury that, it cut off the inference that Skipper constitutionally protects, that prior in-prison conduct is predictive of future good in-prison conduct. Did it exactly say that? I thought it said just the narrow focus was not relevant as opposed to no, I'm sorry. I'm wading back into my former question. Right. I think that the effect, I think either way the effect on the jury was we're not allowed to consider Mr. Lawler's future in-prison conduct in determining his future dangerousness. Thank you. That was his whole defense. That was the only argument really that he had and that he laid. And that's what one of the jurors confirmed, right? At least one of the jurors confirmed that that was their understanding. Absolutely. And the jury questions themselves demonstrate, as of record, that the very point where the trial court drew this erroneous line, that that is where they were seeking additional guidance, seeking additional information. It's what Dr. Cunningham's testimony would have spoken directly to. And in cases, in the Simmons line of cases, the Supreme Court has repeatedly relied on jury questions like that to demonstrate that an error like this was a substantial one. Do you have the site for the, maybe my colleague has it in front of her, the letter? Do you know where it is in the JA? It's all right if you don't. Which letter is that, Your Honor? It's from the juror. I don't have it handy. That's all right. I'm sure I can have it by the time of rebuttal. Just go ahead. I wanted to briefly address Morva and Porter because I know that the court raised that and the parties addressed that in their supplemental briefs. We addressed why, under AEDPA, there's different clearly established federal law governing those claims and governing Mr. Lawler's claims. But I wanted to explain how those cases arose and why they were treated differently. Both Morva and Porter had terrible, violent prison records. And the state was using and arguing those records, in fact, arguing in Morva that he would be violent in prison. One of many examples where the state argues a capital defendant's future in prison conduct in getting a death sentence, the opposite of what Mr. Lawler was not permitted to argue here. They used that evidence to show his dangerousness as a prisoner. And what Morva and Porter both wanted to do was to bring on expert testimony, not focused on themselves, but focused on the Department of Corrections and what steps and security measures the Department of Corrections would take to ensure that, despite their violent characters as prisoners, the DOC would be able to control them. It sort of invited this mini-trial about the Department of Corrections and the prison conditions that it would impose on Mr. Morva and Mr. Lawler. This case involves none of that evidence, despite the fact that the Virginia Supreme Court applied those holdings and accepted the Commonwealth's representation that Mr. Lawler was proffering the same thing. There is not a single place in this record where Mr. Lawler ever proffered prison security conditions or anything about what the DOC was going to do to control him. Quite the opposite, what Mr. Lawler proffered was an individualized assessment. And although the Commonwealth has disputed that, it has never identified one additional thing that Mr. Lawler could have done to make this assessment any more individualized. Okay, so a point I am particularly interested in, we'll assume that there was error with respect to whether the limitation on Dr. Cunningham's testimony. But you, under EPA, you have to do more than that, right? Yes, Your Honor. So maybe you can talk about the rest of that argument. Yes. So there are two independent constitutional bases for admission of this evidence. And if this Court finds that the State Court was unreasonable in applying clearly established federal law on either ground, then relief is what? Right. Not wrong, but unreasonable. Unreasonably applied, clearly established federal law. Correct. The skipper is directly on point. The skipper protects the Congress. Actually, I'm interested in the application in this case. In other words, I think that the State's argument, if they hadn't made it, would be it wouldn't make any difference. The evidence against him was so overwhelming, so terrible, that he would have gotten the death penalty no matter what this evidence came in. And that's what I'd like you to talk about. Well, in terms of the substantial and injurious nature of this error, it's most clearly shown by the jury questions. It's most clearly shown by they deliberated in this case for two full days and part of a third day. How long was the trial? A few weeks, maybe three weeks or so. But it's not at all untoward. Well, I'm not saying it's untoward. I'm saying it was a closed case. And their jury questions. Well, I mean, I don't know that that's an indication. Three days of jury deliberations after a two-week trial is not extraordinary. It's not extraordinary, but it shows that it takes a little bit away from the State's argument that the jury had its mind made up based on the aggravating evidence and nothing would have affected it. Well, and didn't one juror say, I believe Mark would be a continuing threat in regular society, and that is why I voted for a death sentence for Mark. I do not believe that Mark would be a continuing threat in prison while serving a sentence of life without parole. That's correct, Your Honor. And the judge's instruction that this was irrelevant, it was my understanding that the judge's instruction that this was irrelevant, it's not quite clear what this is, but I guess it's that he would not be a continuing threat in prison. Correct, which was his defense. It was the core of the case he was trying to make to the jury. Didn't the judge instruct them, the circumstances of Mr. Lawler, once he is delivered to the Department of Corrections, is not a matter with which you should concern yourself? Correct. And it was after that instruction, which seems to confirm its earlier erroneous rulings, that the jury within an hour or two later came back with a death sentence after two and a half days. So were you trial counsel here? No, Your Honor. Okay. Have you talked to trial counsel? Not recently, Your Honor. Okay. Were you read the record? I certainly have. Well, I just wanted sometimes people come in front of us and say, I wasn't trial counsel and I haven't read the record. Off to a slow start then. So it seemed that there was discussion before there was an attempt to get Dr. Cunningham to testify. Yes. There had been a proffer and there had been – Yes. Is that what your understanding is? Yes, that's correct. And Dr. Cunningham testifies a lot, right? His testimony has been admitted in Virginia before, and I believe he was crossed with sort of how he makes his living, yes. Right. So I'm sort of curious about how this all – did you negotiate with the state about what the questions were that you could ask? Did your predecessor put them to the trial court? Just from my reading of the record, it seemed like a complete surprise to the defense that there was this rule, which had never existed before and hasn't existed since in Virginia, that in-prison conduct evidence is irrelevant under the statutory act. So I think that came as a surprise. They had discussed, they had proffered what he was going to testify about, but the actual ruling that the trial court made came out of left field and it totally cut off sort of every line of questioning that the defense attempted to pursue. I see that I'm running into my rebuttal. I think we might have some more questions. Please. I did have – when you said that this was a close case, did you mean with respect to the penalty phase? Only with respect to the penalty phase. I just wanted – The defense conceded his guilt for the murder at the beginning of the guilt phase. Thank you. Thank you. Good morning, Honors. Good morning. My name is Matthew Dolgan. I'm a senior assistant attorney general on behalf of the warden this morning. The rule in Virginia that prison condition evidence is not relevant on the future dangerous issue is not a new rule. Can you talk just a little bit or bring the microphone closer to you? Sorry, I was getting some feedback. I wasn't sure how loud I was sounding. Thank you. As I said, the rule in Virginia that prison conditions evidence and the conduct in prison is not relevant to the future dangerous question presented to the jury is not a new rule and is not unique to Mr. Lawler's case. We've assembled several of the cases in our brief. I think it's footnote 58. The Supreme Court of Virginia's opinion rehearses its history of the development of the rule that applied in Moore v. Porter and, again, in this case. I hear only odds and ends. What is the point you're making here? I'm arguing that the assertion by counsel that this is a new unique rule applied only in Mr. Lawler's case, that prison condition evidence is not relevant. No, no, no, but you've changed the ball. He didn't talk about prison conditions. He's talking about dangerousness in prison as part of a subset of future dangerousness in general. Do you disagree with that? I disagree that it was presented at trial as part of a subset, yes. No, that's not the question. The question is, do you disagree with your colleague's characterization of Virginia law as recognizing, as having recognized the admissibility of predictive prison behavior as relevant? I think that was the question. I thought you started out in that direction, and then I sort of lost track. What is your statement about what Virginia law says on whether or not evidence of future behavior in prison is admissible for mitigation? That's different than prison conditions. I take your distinction. Thank you. Evidence limited to prison society is not admissible. And where do you get that? Let's just back up a second. Virginia is still part of the union, right? Yes, ma'am. So we're guided by Supreme Court law, especially in AEDPA cases, right? We're guided by, yes, Supreme Court. So how do you square that with Supreme Court law? Because Lockett has said that it's up to the states to decide what is of relevant evidence, and they've decided in further to give guidance to the states that relevant is statements of the circumstance, the events, his record, his character. No, but what about in Skipper where the United States Supreme Court says, quote, evidence that the defendant would not pose a danger if spared but incarcerated must be considered potentially mitigating. Such evidence may not be excluded from the sentencer's consideration. What about that? Wasn't such evidence excluded from the sentencer's consideration here? The only evidence that was excluded from Dr. Cunningham were in objections to when he conflated the question of dangerousness in general to the question of prison society. And the objection and argument that was made at that point at the trial, as I read the record, is that this was a misstatement of Virginia law that he was making, not that he was excluded from giving his opinion. Where in the record was Dr. Cunningham permitted to testify as to Mr. Zook's future dangerousness in prison? He testified. Sorry, my page has gotten out of order. I understood you to say that he wasn't, but I was thinking you were going in the direction of saying he was not allowed to testify only, and I'm sorry, I don't mean to put words in your mouth, but I've been trying to understand the thrust of your argument, that he wasn't allowed to testify only as to prison conditions. That that was the gist of what the trial court was saying, which goes back to my original question to your colleague. That had he presented a totality, it was the subset, it was the exclusivity of the subset that was the problem in the trial court's mind, which is a slightly different argument. I'm not sure it's ultimately availing, but it's a slightly different argument. And that was what I took to be the trial court's ruling, that when it explained its ruling it was telling counsel, and then at one point jury, that society is more inclusive than this statement he's making about future dangerousness. But what about the fact that Mr. Zook, that defense counsel admitted he would be dangerous if out in society? He's already admitted that, so the only aspect left is future dangerousness while incarcerated. He knows he's not getting out, and he admits he probably shouldn't get out. What about that? What would be the point of saying again, yes, I would be dangerous? Didn't they concede that? I don't recall them conceding at a trial, but assuming they did, the standard the jury is instructed on under the statute is his future dangerousness generally. Right. Part of the generally is in prison. Do you concede that now? Do I concede that? Part of future dangerousness is dangerousness in prison. Yes, but the objectionable... Do you concede? Yes. Is that correct? Yes. Okay. I didn't read the state's arguments as acknowledging that in the trial court. The problem, though, with Dr. Cunningham's objected to and excluded testimony was that he did not present it as part. He presented the common subjection was the trial court's ruling was he presented it in a way that was misleading to the jury that this was answering the general future dangerous question, but only looking at... That was the totality of the answer. That's essentially your argument, right? Yes. The way it was presented, and I don't know whether I agree with you or not, but what your argument is that the way it was presented to the jury was that that was the dispositive question, although you have the fact that he had already conceded that he was likely to be... I think there was general recognition that he would likely be a danger in society if released. I think there was a recognition by the court and the prosecution. I don't know that they had conceded that at trial. Well, they hadn't argued to the contrary, had they? They should be released? That's gone. No, they didn't argue that he should be released. They conceded his guilt. Right. Right. So he's futurely dangerous to society because they don't even, he is arguing he should be released. I suppose unless he escaped, but yes. Okay. Well, let's then, let's assume... If I can circle back, I left a question unanswered, and I don't want to forget it. There's a question where Dr. Cunningham had testified to the low violence. In the trial transcript at Joint Appendix 966, he testified, there's a very low likelihood of serious violence from being in prison. And the report and recommendation recognized that statement at JA 86. The district court adopted it. I believe that's 193. The Supreme Court of Virginia found that he had testified that the Department of Corrections had classified Lawler as a low risk for committing violence. A low risk for? So what does that mean? I mean, where are you going with that all? I was responding to a question that I had made a note to answer, but we've gone off. Where did Dr. Cunningham testify to the risk? I had asked whether or not there was testimony about, whether there was testimony about his, about Lawler's behavior in prison, that the objection was focused on Cunningham's inability to make predictive findings about going forward about Lawler's future. But with respect to those excerpts that you refer to, I actually found them a little confusing, because it wasn't clear to me whether it was phrased as there's low, there's a low likelihood of risk of violence in prison in a way that didn't necessarily suggest that it would be Lawler who would be committing the violence. It was a very odd formulation, that language. It didn't seem to be personalized to Lawler. I can't dispute the characterization, but he did testify to that opinion. Okay. Well, for a minute, can you assume that we think that it was error to limit the expert's testimony in the way that it was? Then do you have an argument, or should you go home? I do have at least one argument. Okay. And the simplest argument, I think, is there are two prongs to the Virginia statute for someone to be eligible for a death sentence, future dangerousness, and what's sometimes shorthanded as vileness. And the jury in this case found both circumstances to be here. Are you talking about the statutory aggravating factors? Yes. I'm talking about this in mitigation. Right. This is mitigation evidence. Focus on that. Yeah, not rebuttal. Not rebuttal to the aggravating factors, but in mitigation. Because there are two instances in which the expert testimony is proffered. One is in rebuttal to the aggravating factors, and the other is in mitigation. So take the rebuttal out and focus on mitigation. The principal evidence that the Commonwealth showed that tended to show dangerousness was his prior conduct, his rage-filled attack on his ex-girlfriend, dragging the sheriff down the road. Okay. And mitigation? What we're talking about is violence in prison. What is the – what evidence do you have to show that that evidence would not have been persuasive to the jury in mitigation with respect to the death penalty? What I'm – not very well, I gather – trying to argue is that the evidence the Commonwealth did put forth, both in the crime he was convicted of in these proceedings and in his prior record, shows a fundamentally violent person. Okay. And that the – had the evidence come in, it would have been subject to the same argument that was the Commonwealth's objection, that all he's arguing is that the Department of Corrections would be able to control his violence. Not that he's not violent, not that there's not a risk of future violence, but that we're counting on DOC to be able to control that. But, of course, the State can make that argument. If the evidence can come in, the State can make that argument. Well may prevail. And I'm arguing in this setting that that argument would be quite strong, and I think the Court can infer if it's looking to what to make of assumed error from not letting in Dr. Cunningham's further testimony, that it would not have been persuasive over the record evidence of his violence. So you don't make the argument that Dr. Cunningham was, in fact, allowed to testify about future dangerousness in prison. The State was successful with the district judge in excluding all of that testimony. No, I was taking your question to assume it was yours. Right. And now you've got another question. Okay. I was answering within the hypothetical. Right. Sure. I do stand by our brief argument that, in fact, he was allowed to testify to the relevant characteristics. He was able to testify to his history. He was able to testify to the result of his examining the medical records and of dealing with Mr. Lawler. He was able to give a great deal of expert testimony that was allowed in as relevant to both the dangerousness and general mitigation. Were you at trial, your trial counsel? No. Were you at trial? No, ma'am. Yeah. You've read the record. Yes, ma'am. I think what you say is true, but it's pretty interrupted. I mean, have you had trials? Have you been in a trial? I have been in a trial. So you know how sort of maybe that's all coming out and being understood, but since every question is objected to, since there's a long discussion and then there's a ruling from the judge, it's hard to tell. And then we have this letter from a juror. How do you square what you're saying now with the affidavit? Of course, we have an affidavit from one juror. We have to extrapolate that, speculate, frankly, to think how that might have affected the juror's deliberations as a body. Assuming it's an accurate record. How long does it take to impose the death penalty? All of them? Yes, ma'am. So one's enough? One vote would be enough if that was the vote she came to after general deliberation rather than her own considering it by herself after trial. That's the concern I sometimes have with post-trial jury affidavits. They don't reflect the value of deliberation. That's fair. That's fair, yeah. And the other reason that the mitigation evidence that was proffered to the trial court was found improper by the Supreme Court of Virginia was it was not individualized, that they had a list of specific questions that were shown. It's been argued here and earlier that it was individualized, but the Supreme Court of Virginia and the trial court reviewed the proffered questions and found, except in the one case, that they were not individualized to him, that they were simply the application of some datum to a statistical model. And in the one case it was relevant as to his prior prison conduct. That's where the Supreme Court of Virginia noted that evidence had come in, including the opinion I quoted that he was allowed to testify to. But the back and forth that occurred during his testimony over his opinion was all because, after having been reminded once of the limits of Morva, and in the motion to appoint Dr. Cunningham, they represented that they understood the limits that Morva had set out and represented that he would be able to testify within them. And once he'd been corrected once, that he was misleading his conclusion about society. Well, it doesn't necessarily mean that there was a meeting of the minds as to what those limits were. And, in fact, it's sort of surprising to me the extent of the, that this didn't, that this misapprehension didn't manifest itself in a way that could have been resolved, and perhaps clarifying it even for the trial court. Because it's clear that the defense, or at least the defense maintains, that it did not understand Virginia law to so limit, didn't read Morva in the way that you do. I take their representation. As I read the trial transcript, I don't lay as much at the feet of trial counsel as their witness. That he continued, without necessarily being led there by trial counsel's questions, that he continued to return to this presentation of his opinion as if it applied to society as a whole, when in fact it was relying only on the perception of future danger in prison. And the witness kept coming back to that, objected to presentation of it, and that that was the principal cause of a lot of the back and forth during his testimony. I'm still, because he conceded to me that he would be dangerous out of prison, and his history certainly demonstrated that. I'm not sure I understand, I'm still not sure I understand what the state's position is. I mean, all the time in cases you have one witness testify as to one fact, and another witness testify to another fact. And you don't say to the first witness, you have to testify to both. That just isn't the way it works. So here you had evidence with respect to future dangerousness outside of prison, undisputed evidence. And they want to put in future dangerousness in prison. It's the other half of the equation the jury is allowed to look at. And I'm still not sure I understand the state or the district or the trial court's problem with that. Let me try to repackage. Thank you. And there are two problems on the mitigation side of it. One is, as the Supreme Court held, the proffered questions dealing with mitigation were not individualized except in the one case, and they found that evidence had already come in. But as to the statements that the witness made during trial, which were objected to and the objection was sustained, the problem was not that particular ruling was focused on the fact that the statement he made appeared to refer to society as a whole, where in fact he was basing it only on prison. It was a misstatement of Virginia law to say that the danger in prison was the focus under Virginia law, and it was, as a result, risk misleading the jury on that point. So what you're saying, in essence, is that the way it was presented to the jury, it was designed to mislead or convince the jury that that was the totality of their consideration, that that embraced, that that was all that they had to consider, and that that was misleading. Is that your argument? I see my time has expired. You can answer the question. I don't know that I can say it was designed to mislead. Or that it did. The way it was. Okay. It was the concern. It was the concern that was articulated by the Commonwealth and ruled on in those specific holdings by the trial court. I just want to be sure before you sit down that I do understand what the Commonwealth's position is here. You do acknowledge that future dangerousness in society and in prison both are relevant. And the Supreme Court opinion is held in Andrews that properly presented it, it is admissible and relevant and should come before it. I didn't get that from what the State said below, but I'm glad to hear your representation. The issue here, may I leave the conclusion? Sure. The issue here is how the conclusions were reached and how they were presented, not whether there was some global bar on this type of evidence generally. I think I understand. Thank you. Thank you. For the reasons we asked you for. Thank you. On the question of the defense's concession of Mr. Lawler's dangerousness out in society at large, it may be in other places in the record as well, but at least during his closing argument at 1142 to 1143 of the joint appendix, defense counsel tells the jury, after all there's no denying that when Mark is on drugs and alcohol and he is in the free community he is a danger to others, can't deny that, simply can't. Goes on to nonetheless argue for a life sentence instead of conceding the technical applicability of the aggravating factor. That right to nonetheless argue for a life sentence is recognized, for example, in Tuggle versus Netherlands by the United States Supreme Court. Virginia's statutory scheme permits the jury to find the ags and still sentence to life. That's what the defense was angling for the entire trial. I don't think the Commonwealth at any point at trial disagreed with the factual conclusion that Mr. Lawler makes for a good prisoner. And in cases where they have had the argument available to them that the defendant makes a really bad prisoner, they make that argument strenuously. Morva is a prime example. He had escaped from jail, so of course any prosecutor in front of a jury is going to hammer that home in terms of using it to prove his future conduct in prison. Where the facts were the opposite, Mr. Lawler merely wanted the opportunity to argue in his own favor that he would be a good prisoner. And not having a factual defense, the Commonwealth resorted ultimately and the trial court accepted objections based on a principle of law that simply is not grounded, as the Commonwealth appears to concede that both in-prison and out-of-prison evidence is in fact relevant under Virginia law. I have no further points to make unless Your Honors have additional questions. We appreciate your argument. Thank you, Your Honor. We will come down and greet the lawyers and then we'll go directly to the next case.
judges: Diana Gribbon Motz, Allyson K. Duncan, Stephanie D. Thacker